OPINION OF THE COURT
Gerard M. Weisberg, J.
The Court of Appeals remitted this case[1] to the Court of Claims following a modification of the decision of the Appellate Division, Third Department,[2] which had affirmed the order of the Court of Claims (Sidney Squire, J.),[3]
[4]dismissing the claim for untimeliness. Concurrently with this decision, the Court of Appeals decided Claim No. 52436'* in which it reversed the decision of the Appellate Division[5] and reinstated the order of the Court of Claims[6] which had granted summary judgment to the claimant City of New York.
In both cases, the city sought reimbursement from the State for interest in excess of one year which it had paid to persons whose property the city had taken by condemnation pursuant to section 340-b of the Highway Law. This statute provided in substance that the State was to pay the costs incurred by the city in acquiring certain property under a Federally aided highway program. These costs included interest on condemnation awards. The State’s position was that the statute should be construed to provide for reimbursement of interest for a period of one year only, and the State had previously paid the city that amount. Such a construction was rejected by the Court of Appeals, which held that all interest paid by the city was recoverable.
*813 The city has now moved for summary judgment in view of the Court of Appeals decision in Claim No. 52436, and the State does not contest liability, as indeed it could not. The State’s opposition to the motion is confined to two points: (1) the amount of damages, and (2) whether the city is entitled to prejudgment interest on the damages to be awarded.
The claim seeks damages in the amount of $1,696,692.61. Although the claim is framed as one cause of action, the damage figure actually represents 86 separate and distinct interest payments. The defendant takes issue with 14 of these items and has submitted its own figures, 12 of which are lower than the city’s, and two of which are higher. The State however admits liability in a total amount of $1,648,728.61, leaving $47,964 still in dispute.
The city contends that the State waived its opportunity to contest the amount of damages because it failed to raise that issue in prior litigation. Since at the time this claim was originally filed, the Court of Claims Act did not require the State to put in an answer, and since this claim was previously dismissed on jurisdictional grounds only, the issue of damages did not become material until the Court of Appeals decided the liability issue in Claim No. 52436, and remitted the present claim to this court for further proceedings. We therefore find the city’s argument to be without merit.
The State has admitted liability in the amount of $1,648,728.61. We therefore render partial summary judgment in that amount and hereby sever that portion of the claim which seeks the remaining $47,964. (CPLR 3212, subd [e]; Fleder v Itkin, 294 NY 77; Appelbaum v Gross, 117 Misc 140, affd 200 App Div 914; White v Ballan, 1 AD2d 1052; Green v Hempstead Bank, 27 AD2d 656; Atlas Arm Co. v Smith, 25 AD2d 669, mot to dismiss app den 17 NY2d 860.)
Two arguments have been advanced for disallowing prejudgment interest. First, it is contended that the State may not be obliged to pay prejudgment interest in the absence of specific statutory authority, and that no such authority exists in this case. Second, the defendant maintains that to award prejudgment interest would effectively compound the interest which, in its view, is against public policy. Of these contentions, more will be said later. The city argues that the defendant is collaterally estopped to raise these points since the judgment in Claim No. 52436, which was affirmed by the Court of Appeals, as well as the judgments in two similar claims *814 decided by Judge Leonard Silverman of this court,[7] all made provision for prejudgment interest.
The doctrine of collateral estoppel, as traditionally stated, precludes the relitigation of an issue of fact or law which was necessarily determined in a prior action between the same parties or those in privity with them. (Schuylkill Fuel Corp. v B. & C. Nieberg Realty Corp., 250 NY 304; Statter v Statter, 2 NY2d 668; Restatement, Judgments, § 68; Siegel, New York Practice, § 457 et seq.) As Acting Presiding Justice Hopkins stated in Read v Sacco (49 AD2d 471, 473): "The reason underlying the use of estoppel is the need for the stability of judgments and the economy of judicial time, which emerge from the concept that, once fairly tried, an issue resolved should not be subject to retrial.”
In Schwartz v Public Administrator of County of Bronx (24 NY2d 65), the court held that there are now but two necessary requirements for the application of collateral estoppel: (1) an identity of issue which has necessarily been decided in the prior action and which is decisive of the present one, and (2) a full and fair opportunity to contest the decision now said to be controlling. Of critical importance is the fact that in Claim No. 52436, the State actually litigated the question of what interest rate was applicable to the judgment awarded by the court. Judge Squire wrote a memorandum-opinion[8] devoted entirely to this issue which turned upon a construction of section 16 of the State Finance Law which was relied upon by both parties. The State’s position in the present case is that while it previously litigated the amount of interest, it never raised the issue of the city’s entitlement to interest. The court’s attention has been called to a purported distinction between the doctrines of res judicata and collateral estoppel: that in the former, relitigation of all issues actually raised, or which could have been raised, is barred; while in the latter, only issues which have actually been litigated and determined can form the basis for an estoppel. (See 5 Weinstein-KornMiller, NY Civ Prac, par 5011.25.)
This distinction, though founded in older authorities, has been severely undermined by Statter v Statter (supra) and Schwartz v Public Administrator of County of Bronx (supra), in which Judge Keating stated in the latter case (p 71): *815 "Although we have not previously said so, it is now evident that New York has adopted the full and fair opportunity test in applying the doctrine of collateral estoppel.” Professor Siegel, in his Handbook on New York Practice, takes the position that the doctrine of collateral estoppel applies not only to matters actually litigated, but also to all which are necessarily established by the earlier judgment, litigated or not. This is in accord with our interpretation of Schwartz, which requires that the identical issue be necessarily decided in the prior action.
 There is no question that an award of a specific amount of interest necessarily presupposes a finding of a party’s entitlement to interest per se, just as an award of damages necessarily entails a finding of liability. While it is correct to say that theoretically a party’s right to a certain sum is distinct from the particular amount to which he is entitled, it is always logically possible to break down a complex proposition into its component parts, and to draw distinctions between them, or between each component and the original proposition. Nevertheless, it is a maxim of geometry that the whole is equal to the sum of its parts, and the "whole” in this case is the issue of prejudgment interest. That issue was fully litigated in the previously determined claim,[9] and is the same issue which the State seeks to contest anew. The question of entitlement to interest was clearly a necessary part of the previous judgment, and as such, it cannot be litigated again.
Further, it was the State’s burden to show that it did not have a full and fair opportunity to contest the prior action. Quoting again from Judge Keating in Schwartz v Public Administrator of County of Bronx (24 NY2d 65, 72, supra): "A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and forseeability of future litigation.”
Of particular significance is the extent to which the State litigated the previous claim, which, as heretofore men *816 tioned, was decided on the merits by the Court of Appeals. Future litigation was a certainty since there were at that time at least 18 other claims[10] pending in this court for the identical relief. It was precisely for this reason, and because of the large sums of money at stake, that the question of prejudgment interest was litigated so thoroughly before Judge Squire.* [11] We conclude, therefore, that the State is collaterally estopped to raise the issue of prejudgment interest at this time.
Notwithstanding the foregoing holding, it would be of concern to us if, by estopping the State, we were permitting some grave legal error to stand uncorrected. In fact, quite the reverse is true. The first argument advanced by the State is that to award prejudgment interest in this case would be to award compound interest, since the underlying claim is also for interest, and it is contended that this is against public policy. Three New York cases are cited in support of this proposition, Giventer v Arnow (37 NY2d 305); NewburgerMorris Co. v Talcott (219 NY 505); and Young v Hill (67 NY 162). In Giventer an action was brought upon a note which provided for the payment of 7.5% interest, the maximum legal rate, to be compounded quarterly. Since the compounding of 7.5% yielded an effective interest rate of 7.72% per annum, the note was held usurious and void under subdivision 1 of section 5-511 of the General Obligations Law. The crux of the decision was usury, the compounding of interest being merely the means by which that unlawful result was accomplished. In Newburger-Morris Co. v Talcott (supra) and Young v Hill (supra), the rule was stated that compound interest can be recovered only upon some new independent agreement made after simple interest has accrued. In the latter case, the court stated (p 167): "When, by the terms of an obligation, interest is payable at stated periods, interest upon interest from the time it becomes due, only gives the creditor the usual and legal equivalent for the non payment of money payable at a day certain”.
The chief difference between Young and the present case is that the former concerns a private agreement, whereas we are concerned here with a judgment of a court. However, the granting of prejudgment interest would hardly violate the rule *817 of that case since the underlying amount of interest claimed by the city became a liquidated claim against the State on a day certain by virtue of section 340-b of the Highway Law. The awarding of interest in this case would do no more than compensate the. city for the wrongful withholding of a stated sum. Indeed, to deny the city’s request would allow the State to retain accrued interest on moneys to which the city was entitled over 10 years ago.[12]
There is, moreover, ample authority for "interest upon interest”. In Yonkers Contr. Co. v New York State Thruway Auth. (25 NY2d 1, mod 26 NY2d 969), claimant brought suit for extra work performed incident to a contract with the defendant. The court said (p 6): "Yonkers is, therefore, entitled to interest on the severed judgment of $121,474 and interest on such unpaid interest.” Similarly, in D’Angelo v State of New York (200 Misc 657), where the first of claimant’s causes of action under a construction contract was severed and a judgment was awarded under a stipulation providing that the issue of interest would be held in abeyance pending the resolution of the remaining causes of action, the court’s final judgment included an award of interest on the first cause of action and interest upon that interest to the day of judgment. The court said (p 668): "Inasmuch as claimants were entitled to the payment of the said sum of $553.62 on July 26, 1949 [interest upon the first cause of action on the date of entry of summary judgment], and the use of it has been withheld from them since that date they are now entitled to interest thereon to the date of entry of judgment.”
In Lakeside Paper Co. v State of New York (45 App Div 112), the State wrongfully shut off the water supply to claimant’s paper mill. As in the present case, the final resolution of the issues was delayed by lengthy appeals. The court said (p 114): "The damages were caused in 1892, and the claimant’s demand has been delayed by the unsuccessful litigation of the State. (Lakeside Paper Co. v. State, 15 App. Div. 169.) We think interest from the date of filing the claim might properly be added to the award, otherwise full compensation may not be awarded. (Wilson v. City of Troy, 135 N. Y. 96.)” (See, also, Weeks v State of New York, 48 App Div 357.)
The foregoing authorities indicate that "interest upon *818 interest” is not against public policy and may indeed be necessary to effectuate a just result.
The second proposition urged by defendant is that the State, being a sovereign entity, cannot be compelled to pay interest unless the obligation is expressly created by statute; and that no such authority exists in the present case. The State has cited United States v Tillamooks (341 US 48) and United States v North Carolina, (136 US 211). In the latter the court stated (p 216): "Interest, when not stipulated for by contract, or authorized by statute, is allowed by the courts as damages for the detention of money or of property, or of compensation, to which the plaintiff is entitled; and, as has been settled on grounds of public convenience, is not to be awarded against a sovereign government, unless its consent to pay interest has been manifested by an act of its legislature, or by a lawful contract of its executive officers. United States v. Sherman, 98 U.S. 565; Angarica v. Bayard, 127 U.S. 251, 260, and authorities there collected; In re Gosman, 17 Ch. D. 771.”
 Whatever may be the Federal law, the New York courts have not given their assent to this doctrine as a rule of general application, though the concept has been employed in the limited area of tax refunds. (See infra, p 819.) The prohibition against awarding interest against a governmental entity is simply an element of sovereign immunity which has been waived in this State by virtue of the Court of Claims Act. Permission to prosecute a claim in the Court of Claims has been construed, in the absence of restrictive provisions respecting interest, to permit the award of interest to be determined as a matter of discretion. In Parmenter v State of New York (135 NY 154), a claim was brought for printing performed by claimant for the State Legislature. Pursuant to its statutory authority to hear, audit and determine the claim, the State Board of Claims, a predecessor of the present Court of Claims, awarded prejudgment interest, which result was affirmed by the Court of Appeals, saying that the board had not overstepped its jurisdiction since this type of claim would ordinarily bear interest from the time when it accrued. Similarly, in Ausable Chasm Co. v State of New York (152 Misc 194, affd 242 App Div 881, revd on other grounds 266 NY 326), claimant constructed a bridge over the Ausable River which rendered portions of a State highway available for public use. The Legislature passed an act allowing the Court of Claims to award compensation, and render judgment for " 'such sums as *819 it may determine to be just and equitable’ ” (p 195). Judge Barrett stated (p 196): "The enabling act does not provide in specific terms for interest upon the sum awarded, and whether interest shall be allowed is, I think, within the discretion of this court.” Further, it was held in D’Angelo v State of New York (200 Misc 657, supra) that the provisions of CPLR 5001 and 5002, which make mandatory an award of interest on contract actions, was applicable to a judgment of the Court of Claims.
We reaffirm the principle that the Court of Claims has authority to award interest upon a judgment in any cause of action which would ordinarily bear interest. Judge Squire has previously held that the city’s claim against the State is one for implied contract.[13] Under the rule in D’Angelo, the award of interest is mandatory.
There remains to be considered the case of Matter of Brodsky v Murphy (25 NY2d 518) upon which the State principally relies. In that case the Appellate Division had annulled a determination of the State Tax Commission (Commission), ruling that the imposition of a tax upon petitioner had been erroneous.[14] Upon remittal to the Commission, a refund was awarded, though without interest. Subsequently, CPLR article 78 proceeding was brought in the nature of a mandamus, to compel the Commission to award interest. The Appellate Division dismissed the proceeding on the theory that the order remitting the matter had not mentioned interest and, consequently, the Commission had no clear duty to award it. The court indicated that the proper remedy was a motion to modify the order of remittal to provide for interest. The Court of Appeals, however, bypassed this procedural argument, and decided the case on a different theory, holding that where a tax refund statute fails to specifically provide for interest, it may not be given. The court indicated that the general practice statutes relating to interest, such as CPLR 5001, were not applicable since the Legislature had made specific provisions in various tax statutes for interest where the intent to allow it was manifest. The court distinguished Matter of O’Berry (179 NY 285), which held that a taxpayer was entitled to a refund with interest where the tax statute had been ruled unconstitutional. The court held in Brodsky that, while it might be justified to award interest where a tax had been collected *820 under an unconstitutional and therefore void statute, the reverse was true where the statute was valid but had been erroneously interpreted by the Commission. Prior to Brodsky, the OBerry case had been interpreted to mean that where a tax statute was silent as to interest, it could be awarded and, conversely, was prohibited only where the tax statute specifically so provided. (See, e.g., Matter of Lehigh Val. R. R. Co. v Joseph, 281 App Div 57, affd 305 NY 853.) It is now clear that interest upon a tax refund will be authorized only where a statute specifically so provides. (See Matter of City of New York v Procaccino, 46 AD2d 594.)
The decision in Matter of Brodsky v Murphy (25 NY2d 518, supra) has no application to the case at bar for several reasons. The ratio decidendi thereof was legislative pre-emption in the taxing field. As Judge Breitel stated (p 523): "The [tax] statutes, it would seem, make one thing clear, namely, that the Legislature did not leave the question of interest to be covered by the general practice statutes. There are just too many tax statutes that cover the issue expressly, one way or the other.”
Further, the court’s decision in Brodsky is expressly limited to awards by administrative agencies, as opposed to courts. The Court of Appeals noted specifically that a taxpayer’s entitlement to interest could depend upon whether he received his refund administratively, or conversely, by virtue of a special judicial proceeding. This is an anomalous result and the Court of Appeals so stated. However, this is merely a consequence of the vastly different powers of courts and administrative agencies, and particularly the Court of Claims with relation to awards against the State. Administrative agencies have no general power to disburse State funds in an adjudicative capacity, whereas, the Court of Claims clearly does within the limits of the Court of Claims Act. We do not interpret Brodsky as imposing any limitation upon this court’s power to award interest against the State, nor does that case have the effect of reviving an aspect of sovereign immunity which has long since been abandoned.
The remaining questions concerning the rate of interest to be applied and the date of accrual have already been determined. The Court of Appeals held this claim to be timely based upon an accrual date on or about January 13, 1967. As previously indicated, Judge Squire adjudicated the issue of *821 the amount of interest to be awarded in Claim No. 52436.[15] Since section 16 of the State Finance Law provided for a 4% rate of interest when that claim accrued and was subsequently amended to provide for a 6% rate of interest (L 1971, ch 874, eff June 25, 1971), it was determined that interest at the lower rate should be awarded until the effective date of the amendment and at 6% thereafter. We deem ourselves bound by these findings for the reasons heretofore stated.
Accordingly, the court directs that the clerk of this court enter partial summary judgment in favor of the City of New York against the State of New York in the amount of $1,648,-728.61 with interest at 4% from January 13, 1967 until June 24, 1971, and at the rate of 6% from June 25, 1971 to the date of entry of judgment herein.
As to the contested items of damage, amounting to $47,964, the court finds that a triable issue of fact exists and, to that extent only, summary judgment is denied. (Curry v Mackenzie, 239 NY 267.) The trial of this issue shall be heard at a time and place of which counsel shall be notified and, upon rendition of the decision with respect thereto, an appropriate supplemental judgment shall be entered.

. City of New York v State of New York (40 NY2d 659).

. City of New York v State of New York (49 AD2d 644).

. City of New York v State of New York (61 Misc 2d 517; 64 Misc 2d 456).

. See footnote 1.

. City of New York v State of New York (49 AD2d 641).

. City of New York v State of New York (64 Misc 2d 421, supra).

. City of New York v State of New York (92 Misc 2d 195).

. Court of Claims, Aug. 13, 1971 (Squire, J.).

. Claim No. 52436.

. See Court of Claims New York Calendar, Jan. 5,1978.

. See City of New York v State of New York (64 Misc 2d 421, 422, supra) in which Judge Squire describes Claim No. 52436 as a "test case”.

. This claim was filed on March 9, 1967 for items claimed to be due commencing in 1960.

. See footnote 8.

. See Matter of Brodsky v Murphy (26 AD2d 225, affd 20 NY2d 828).

. See footnote 8.